IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| *In re* EX PARTE APPLICATION *of* SOCIÉTÉ D'ETUDE DE RÉALISATION ET D'EXPLOITATION POUR LE TRAITEMENT DU MAIS,  :  :  :  :  : *Applicant*  :  : for an Order for a Subpoena, Pursuant to 28 U.S.C. § 1782(a), for Domestic Discovery for Use in Foreign Proceedings,  :  :  :  : *to be served on*  :  : 1&1 Mail & Media Inc., *fka* GMX Internet Services Inc.  :  : | MISCELLANEOUS ACTION  No. 13-mc-0266 |

**MEMORANDUM**

PRATTER, J.                                                                                   NOVEMBER 22, 2013

On November 20, 2013, Société d'Etude de Réalisation et d'Exploitation pour le Traitement du Mais ("SERETRAM") applied for an order for leave to file a subpoena on 1&1 Mail & Media Inc., formerly known as GMX Internet Services Inc. ("GMX"), pursuant to 28 U.S.C. § 1782(a), to obtain discovery here in the United States for use in an ongoing criminal proceeding in France, as well as an expected criminal proceeding in the United Kingdom, against a fraudster who allegedly used a GMX-hosted email address in furtherance of a successful scheme to abscond with €17 million of SERETRAM's funds.

In brief, according to its application: SERETRAM, a French food processing company owned 50% by General Mills Corporation, had €19 million in capital before a fraudster impersonated its Financial Director, André Yvin, in an email sent from a fraudulent address, which the fraudster claimed was Mr. Yvin's personal email address. From this fraudulent

1

address, the fraudster emailed a SERETRAM accountant, Annie Larrouture, and instructed her that a takeover bid would soon precipitate but that it was "highly confidential" such that she should communicate about it to no one else. In a statement of particular relevance to the instant application, the fraudster directed Ms. Larrouture to contact "our legal firm" at cabinet.laborde-finance@gmx.com—as evident from the address, a GMX-hosted account. In emails that followed, the fraudster directed her to transfer, in four installments, approximately €17 million of SERETRAM's funds to a bank account. Only when another SERETRAM employee attempted to shift funds from another of SERETRAM's accounts after the fraudulent transfers overdrew the transferor account did a bank inform that SERETRAM employee of its concern that the transfers might be fraudulent, thereby opening SERETRAM's proverbial eyes to what had really occurred.

In the days that followed, the London police began an investigation and SERETRAM obtained its own order from the London High Court on November 7, 2013, compelling production of the relevant bank records. SERETRAM also obtained an order from the High Court of Hong Kong freezing bank accounts that had received funds originating with the fraudulent transfers. Criminal proceedings are underway in France and are expected to be initiated soon in the United Kingdom.

SERETRAM, applying ex parte to this Court, now seeks discovery from GMX regarding the allegedly fraudulent GMX account, which the fraudster used to cast an aura of authenticity over its deception. SERETRAM wants information about the identity of the owner of the account, his or her location, and any other information that will assist in pursuing redress against or punishment of those responsible for the fraud. For the reasons that follow, SERETRAM's application will be granted as outlined below and specified in the accompanying Order.

\* \* \*

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782(a) provides, in full:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

The Supreme Court has interpreted § 1782 but once, in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, but that decision provides most of the guideposts needed here.[1] The

---

[1] The main issue that *Intel* does not touch upon is the propriety of the district court's proceeding on an ex parte basis. Any fair interpretation of § 1782(a)'s plain language, however, especially when made in conjunction with the purposes of the statute as discussed by the Supreme Court in *Intel*, should read it to encompass ex parte proceedings. In particular, the statute provides, "The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing." 28 U.S.C. § 1782. And even if this language is not operative, there is no reason to suspect that proceeding on an ex parte basis is improper, because GMX will have an opportunity to move to quash should it so desire. *See, e.g.*, *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."); *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("Letters Rogatory are customarily received and appropriate action taken with respect thereto ex parte.

3

core of § 1782(a) consists of two components: (1) mandatory requirements that the applicant must meet to trigger (2) the district court's weighing of discretionary factors regarding whether to grant the application, because "[t]he statute authorizes, but does not require, a federal district court to provide assistance to a complainant . . . ." *Intel*, 542 U.S. at 255. So long as the district court correctly applies the law, its analysis in the discretionary second stage is reviewed for abuse of discretion. *In re Chevron Corp.*, 633 F.3d 153, 161 (3d Cir. 2011).

The mandatory requirements relevant here, as the language of the statute indicates, are as follows: (1) the person to be subpoenaed must reside in the district in which the district court sits; (2) the request must be for "testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal"; (3) "proceeding . . . include[es] criminal investigations conducted before formal accusation"; and (4) the request may come from "any interested person." 17 U.S.C. § 1782(a). These statutory requirements are met here.

First, GMX resides within the Eastern District of Pennsylvania, namely, at 701 Lee Road, Suite 300, Chesterbrook, PA, 19087. *See* Lacovara Decl. ¶ 8; Ex. C; *see also Intel*, 542 U.S. at

---

The witnesses can and have raised objections and exercised their due process rights by motions to quash the subpoenas."); *In re Ex Parte Application of Nokia Corp.*, No. 13-mc-80217, 2013 WL 6073457, at *2 (N.D. Cal. Nov. 8, 2013) ("It is common for parties to request and obtain orders authorizing discovery ex parte."); *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) ("[S]uch *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.").

Moreover, a survey of *Intel*'s citing references reveals that the use of ex parte applications is widespread and, in many cases, unremarked upon (and thus approved of *sub silentio*). *See, e.g.*, *In re Request from UK Pursuant to Treaty Between Gov't of U.S. & Gov't of UK on Mut. Assistance in Criminal Matters in the Matter of Dolours Price*, 685 F.3d 1, 6 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1796 (2013); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 78 (2d Cir. 2012); *In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 992 (11th Cir. 2012); *In re Clerici*, 481 F.3d 1324, 1329 (11th Cir. 2007).

246 ("Section 1782(a) provides that a federal district court 'may order' a person 'resid[ing]' or 'found' in the district to give testimony or produce documents 'for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person.'"). Second, in seeking information about one of GMX's users, SERETRAM has requested discovery that clearly falls under the "testimony or statement" or "document or other thing" requirement.

Third, each of the criminal proceeding in France and the expected criminal proceeding in the United Kingdom, *see* Lacovara Decl. ¶¶ 5, 6, provides an independently adequate instantiation of "a proceeding in a foreign tribunal, including criminal investigations conducted before formal accusation," 17 U.S.C. § 1782(a). Indeed, in *Intel*, the Supreme Court rejected the respondent's proffered interpretations of § 1782(a) that the foreign proceeding must be "pending" or even "imminent" in favor of holding, consistent with the statute's plain text as well as Congress's purpose evident in the legislative history, "that § 1782(a) requires only that a dispositive ruling . . . be within reasonable contemplation." 542 U.S. at 258-259.

Finally, SERETRAM is an "interested person." As the Supreme Court explained in *Intel*, the statute's "text makes plain" that "interested person" reaches beyond litigants to include complainants, 542 U.S. at 256 (citation and internal quotation marks omitted)—clearly SERETRAM's status here.

\*   \*   \*

Because SERETRAM has met § 1782(a)'s mandatory statutory requirements, the Court must consider the discretionary factors enumerated by the *Intel* Court in order to decide whether to grant its request, because "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264.

First, the fact that SERETRAM is a nonparty to the French and likely British actions militates in its favor because

> when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id.*; *see also, e.g.*, *In re ex parte Lee-Shim*, No. 13-mc-80199, 2013 WL 5568713, at *2 (N.D. Cal. Oct. 9, 2013). In fact, SERETRAM requests information so that it can both assist in the criminal investigation as well as pursue relief in parallel on its own. As the victim of fraud, it should be able to do so.

Second, the Court is unaware of any policy observed by the French and English courts that would limit "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; nor does the Court believe that SERETRAM is attempting to "circumvent foreign proof-gathering restrictions or other policies." *Intel*, 542 U.S. at 264-65; *see also, e.g.*, *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) ("[T]o decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States."). To the contrary, the London High Court has already ordered discovery relating to the bank account in question, *see* Lacovara Decl. ¶ 5; although that account is held in the United Kingdom rather than here in the United States, such discovery weighs in SERETRAM's favor.

And finally, although "unduly intrusive or burdensome requests may be rejected or trimmed," *Intel*, 542 U.S. at 265, SERETRAM's request cannot be so characterized. Instead, SERETRAM's

> proposed subpoena calls for the production of information about the owner of the GMX Account (such as their name, the date the account was created, and any phone numbers or e-mail addresses associated with the GMX Account), sign-in IP addresses and time stamps indicating when the account was accessed from what IP address, and any billing information for paid services linked to the GMX Account. The requests seeks information that will help Seretram identify and locate the fraudster and, ideally, trace the money that was stolen. The universe of responsive information is likely to be readily identifiable and easy to produce.

Appl. at 9-10. Further, SERETRAM points out, GMX's General Terms & Conditions contemplate such disclosure. *See* Lacovara Decl. Ex. E at 6.[2] The Court agrees with SERETRAM's assessment of its subpoena.

\*   \*   \*

In sum, because all the discretionary factors weigh in favor of granting an order for the issuance of SERETRAM's Proposed Subpoena (Appl. Ex. B (*see* Docket No. 2)), the Court will do so. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[2] The Exhibit is of GMX's General Terms & Conditions, which state, in pertinent part,

> NOTWITHSTANDING THE PROVISIONS OF THIS AGREEMENT TO THE CONTRARY, GMX RESERVES THE RIGHT (SUBJECT TO APPLICABLE LOCAL LAW), IN ITS SOLE DISCRETION, TO DISCLOSE INFORMATION OR MONITOR YOUR ACCOUNT, INCLUDING BUT NOT LIMITED TO THE USE OF A USER'S ACCOUNT, FOR THE PURPOSE OF INVESTIGATING VIOLATIONS OF THIS AGREEMENT OR TO ASSIST WITH CRIMINAL OR CIVIL INVESTIGATIONS.

*General Terms & Conditions* 14.2, GMX, http://www.gmx.com/terms.html (last visited Nov. 22, 2013).